## MARSHALL BRACE *vs.* WILLIAM YALE.

A deed of a mill site described by metes and bounds gives no right to the use of a reservoir dam above, which is owned by the grantor, although the stream is small and the use of the reservoir dam is necessary to the beneficial use of a mill upon the granted premises.

If the owners of different mill sites upon the same stream join in the erection of a reservoir dam for their common benefit, and the titles to the different privileges afterwards become united in the same person, a conveyance by him of the lower mill site by metes and bounds gives no right to the use of the reservoir dam.

If the mortgage of a mill site does not include the right to use a reservoir dam upon the stream above, the mortgagee cannot avail himself of a right to use the same obtained by the mortgagor and his grantors by prescription, if he does not show a conveyance of such right to himself.

A deposition *in perpetuam*, taken at the request of owners of different mill sites upon a stream, for the purpose of establishing the right to flow land by means of a reservoir dam which was used jointly by them, is not admissible in evidence for the purpose of establishing a right to use the reservoir dam in one to whom the lower mill site was afterwards conveyed by a deed which did not include such right.

CHAPMAN, J.    This is an action of tort, in which the plaintiff alleges that the defendant entered upon his close, and raised the

gates of his water dam situated thereon. The defendant justi-
fies as servant of Allen S. Yale, who is the assignee of a mort-
gage of a mill and mill site on the stream below the plaintiff's
close, and who, he alleges, has a right to cause the gates to be
raised for the purpose of working his mill.

It appears that the plaintiff is the owner of the close on
which the dam is situated, and also of a saw-mill on a close
below the same, and below Allen S. Yale's mill, and that the
dam in question was built for a reservoir dam and is used by
the plaintiff as such.

Allen S. Yale holds his mill and privilege on the stream be-
low, under a deed from Moses Barnum to Sewall Sergeant,
dated November 4, 1823. This deed conveys a tract of land
on the stream, described by metes and bounds, and estimated
to contain forty rods of land, together with the right to erect a
dam thereon, and flow the land above by means of it. But
there is nothing in the terms of this deed that can be construed
to include a conveyance of the right to use the reservoir dam
above, even if the grantor had a title which he could convey.
This land and privilege were afterwards conveyed by Sergeant
to Loring Barnum and Henry Lincoln, and they mortgaged it
to Catherine M. Sedgwick, December 10, 1834. The mortgage
refers to the deed of Moses Barnum to Sergeant for a descrip-
tion of what it conveys, and of course it conveys nothing more
Allen S. Yale holds this mortgage by assignment.

The defendant offered evidence tending to show that the
stream below the reservoir dam is very small, and runs down
a steep hill; and that between Allen S. Yale's mill and the
reservoir dam there is no place where the water can be collected
into a pond sufficient to drive Yale's mill for a longer space of
time than a few hours; and he contends that the reservoir dam
is therefore necessary for the profitable working of Yale's mill,
and that the right to take water from the reservoir dam is thus
annexed to Yale's mill by a natural necessity, and is appurte-
nant thereto. But this doctrine is novel, and none of the cases
cited give countenance to it. Sewall Sergeant took the stream
as it was; and his right to use it is clearly defined in his deed.

The deed, and not his subsequent convenience or necessity, is the measure of his rights.

After Sergeant's purchase, namely, November 5, 1823, an agreement was made, under seal, between him and Loring Barnum, a son of Moses, who then owned the lot on which the reservoir dam stands, and also owned the saw-mill now owned by the plaintiff, by which the parties agreed to erect the reservoir dam for their joint accommodation and use. The dam was erected and used by them under this agreement. On the 5th of October 1834 Sergeant conveyed to Loring Barnum and Henry Lincoln the same premises which had been conveyed to him by Moses Barnum. Loring Barnum being still the owner of the upper site, this sale practically annulled the agreement of November 5, 1823, and no rights derived from it were mortgaged to Catherine M. Sedgwick. The agreement therefore is not material to this case.

The defendant contends that the use of the reservoir dam by the mill owners, ever since its erection, creates a title in Allen S. Yale, under the mortgage to Catherine M. Sedgwick. But as the right to its use was not conveyed to her, such a user, to be available to Yale, must have been adverse to the owner of the dam, and Yale must have the title of the disseisors in himself. But he fails to connect himself with the title under which it has been used; and therefore it is not available to him.

The deposition of Oliver Partridge, taken *in perpetuam*, at the request of Loring Barnum and Henry W. Thompson, May 29, 1840, they being then the owners, respectively, of the upper and lower sites, was offered in evidence and rejected. It appears that this deposition was taken to perpetuate evidence against the land owners above the reservoir dam, as to the right to flow the lands by means of the dam; and it contains nothing in reference to the rights of the mill owners below, as between themselves. Its rejection was proper.          *Exceptions overruled.*

*H W. Bishop*, for the defendant.

*J. E. Field*, for the plaintiff.